UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:22-cv-11-MOC

| | |
|---|---|
| JAMES ANTHONY FINE, | ) |
| Plaintiff, | ) |
| v. | ) **ORDER** |
| KILOLO KIJAKAZI,<br>Acting Commissioner of<br>Social Security, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 11, 13). Plaintiff brought this action, pursuant to 42 U.S.C. § 405(g), for review of Defendant's final decision that Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

**I.    ADMINISTRATIVE HISTORY**

Plaintiff seeks judicial review of the Social Security Administration's decision denying his application for Supplemental Security Income Benefits (SSI) under Title XVI of the Act, 42 U.S.C. § 423(a), alleging disability beginning May 10, 2016. (Tr. 63). After a hearing, an ALJ found in a decision dated May 14, 2021, that plaintiff was not disabled. (Tr. 63–82). Furthermore, the ALJ declined to reopen a prior SSI denial decision, and, therefore, only considered eligibility for benefits based on the filing date of plaintiff's current application for supplemental security income, being January 13, 2020. (Tr. 63).

The Appeals Council denied review of the ALJ's decision on December 7, 2021, making the ALJ's decision the final decision of the Commissioner. (Tr. 3–9). Having exhausted his

1

administrative remedies, plaintiff commenced this action under 42 U.S.C. § 405(g), seeking judicial review of that decision. The Commissioner has answered plaintiff's complaint, and this case is now before the Court for disposition of the parties' cross-motions for summary judgment.

## II. FACTUAL BACKGROUND AND ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation in the analysis of plaintiff's alleged disability. See 20 C.F.R. § 416.920(a). In particular, the ALJ found that plaintiff had the following severe impairments: schizophrenia, depression, anxiety, and a history of epilepsy. (Tr. 66, Finding 2). The ALJ further found that plaintiff's substance abuse disorder was not severe since he had a history of substance use and alcohol abuse before he stopped working. (Tr. 66).

The ALJ further found plaintiff had the residual functional capacity (RFC)[1] to perform a restricted range of medium exertional work. (Tr. 69–70, Finding 4). In so finding, the ALJ physically limited plaintiff to never climbing ladders, ropes, or scaffolds, but he can frequently climb ramps and/or stairs; and can have frequent, but not constant, exposure to workplace hazards such as unprotected heights and dangerous machinery. (Id.).

Mentally, the ALJ limited plaintiff to being able to understand, remember, and carry out unskilled work of a routine nature; maintain attention and concentration for at least two-hour periods of time sufficient to carry out unskilled work during a normal workday for a normal work week; adapt to routine workplace changes at a nonproduction pace (meaning non-assembly line or conveyor-built type jobs, and not at a piece rate pace). (Id.). Additionally, plaintiff can have occasional interaction with the public; and have frequent but not constant

---

[1] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. § 404.1545.

interaction with his coworkers and supervisors, meaning no work requiring teamwork for task completion. (Id.).

Plaintiff, who has a high school education, was 39 years old, which is defined as a younger individual, when his disability application was filed. (Tr. 80, Findings 6 & 7). The ALJ found plaintiff unable to perform his past skilled, medium exertional work as a stained-glass installer. (Tr. 80, Finding 5). In so finding, the ALJ determined that in understanding, remembering, or applying information, plaintiff has only mild limitations. (Tr. 67). However, in interacting with others; in concentrating, persisting, or maintaining pace; and in adapting or managing oneself, plaintiff has moderate limitations. (Tr. 67–68).

The ALJ explained that treatment records show that plaintiff remained capable of independently and adequately participating in his medical care, including following medication instructions. (Tr. 67). The ALJ pointed out that plaintiff's daily activities show that he is capable of handling money, shopping, using a cellular phone, and going about the community unaccompanied. (Id.). He is also capable of performing household choirs, preparing simple meals, and caring for personal needs. (Id.). The ALJ noted that plaintiff can interact appropriately with medical professionals and clinic/hospital staff as required. (Id.). The ALJ found that plaintiff is capable of living with others and reports that he is capable of maintaining relationships (family, friends, or neighbors) without significant conflict. (Tr. 68). The ALJ commented that plaintiff has routinely and consistently been observed to be alert and fully oriented at office visits or other encounters with medical professionals. (Id.). The ALJ noted that plaintiff even cares for pets. (Id.). In addition, his condition has remained stable. (Tr. 69).

The ALJ denied benefits based upon a substantial number of jobs—identified by the hearing's vocational expert (VE)—a hypothetical person with plaintiff's RFC could perform.

(Tr. 80–81, Finding 9). These unskilled (SVP 2) jobs were furniture cleaner (DOT #709.687-014); laundry laborer (DOT #361.687-018); and crate liner (DOT #920.687-078). (Id.).

### III. STANDARD OF REVIEW

#### A. Substantial Evidence Review

Section 405(g) of Title 42 of the U.S. Code permits judicial review of the Social Security Commissioner's denial of social security benefits. The district court's primary function when reviewing a denial of benefits is to determine whether the ALJ's decision was supported by substantial evidence. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987) (citing 42 U.S.C. § 405(g); Knox v. Finch, 427 F. 2d 919, 920 (5th Cir. 1970)). A factual finding by the ALJ is only binding if the finding was reached by a proper standard or application of the law. See Coffman, 829 F.2d at 517 (citing Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980); Williams v. Ribbicoff, 323 F.2d 231, 232 (5th Cir. 1963); Tyler v. Weinberger, 409 F. Supp. 776, 785 (E.D. Va. 1976)).

Substantial evidence "consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (quoting Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)). Put plainly, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). However, it has been determined that "[i]n reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgement for that of the Secretary." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990)). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the

responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Craig, 76 F.3d at 589 (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)).

The Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2). To qualify for DIB under Title II of the Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under retirement age, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act. To qualify for Supplemental Security Income (SSI) disability benefits under Title XVI of the Act, insured status is not an eligibility factor. However, income and resources are a factor.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

5

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)–(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id. Evaluation of mental impairments is conducted under 20 C.F.R. § 416.920a's special technique.

## IV. FINDINGS AND CONCLUSIONS

Plaintiff contends that, in applying 20 C.F.R. § 416.920a's special technique, the ALJ failed to consider all the relevant and probative evidence when rating the degree of functional limitation Plaintiff experienced. Plaintiff further notes that additional error follows the ALJ's failure to properly assess the evidence regarding Plaintiff's functional limitations under the special technique. Plaintiff contends that since the ALJ did not consider all relevant and probative evidence when assessing the degree of Plaintiff's mental limitations at this step, the ALJ's RFC conclusions, which are based in part on her assessment of Plaintiff's mental limitations under the special technique, are also not supported by substantial evidence. Plaintiff also contends that the ALJ's negative conclusions regarding the severity of Plaintiff's symptoms are not supported by substantial evidence.

## A. Plaintiff's contention that the ALJ failed to consider all the relevant evidence when rating the degree of functional limitation under the special technique set forth in 20 C.F.R. § 416.920a

Plaintiff first contends that that ALJ's conclusions are not supported by substantial evidence because the ALJ failed to consider all the relevant evidence when rating plaintiff's degree of functional limitation under the special technique set forth in 20 C.F.R. § 416.920a. The Court agrees.

20 C.F.R. § 416.920a describes the special technique that must be followed by SSA when assessing the degree of functional limitations a claimant experiences as a result of their mental impairments. If a claimant has a severe medically determinable mental impairment, "we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section." See § 416.920a(b). 20 C.F.R. § 416.920a(c) indicates that:

(1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervisor or assistance you require, and the setting in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in Appendix 1 to subpart P of part 404 of this chapter for more information about the factors we consider when we rate the degree of your functional limitation.

The Listing of Impairments 12.00D1a specifically notes that:

> " . . .living arrangement, including assistance from your family or others, may help you by reducing the demands made on you . . .Therefore, when we evaluate the effects of your mental disorder and rate the limitation of your areas of mental functioning, we will consider the kind and extent of supports you receive . . .This evidence may come from you or third parties who are familiar with you, and other third party statements or information. Following are some examples of the supports you may receive:
>
> a. You receive help from family members or others who monitor your daily activities and help you to function. For example, family members administer your medications, remind you to eat, shop for you and pay your bills . . .".

Here, the ALJ concluded that Plaintiff had severe medically determinable mental impairments. Plaintiff generally agrees with the ALJ's conclusions that his mental health impairments were severe. Plaintiff contends, however, that the ALJ's failure to consider all the relevant evidence when assessing and rating the degree of functional limitations he experiences due to his mental impairments and related symptoms is harmful error that prevents substantial evidence from supporting his conclusions. The Court agrees.

Here, the ALJ ignored the probative evidence of the substantial assistance Plaintiff receives from family members who monitor his daily activities and help him to function by administering his medications, making sure he eats, shopping for him, managing his finances, transporting him to medical appointments, attending these appointments to help report his symptoms and understand medical instructions, laundering his clothes, etc. The ALJ's failure to properly assess the degree of functional limitations he experiences under the special technique not only undermines the ALJ's conclusion that Plaintiff did not meet or equal a Listing at Step 3, but it also prevents the ALJ's RFC conclusions from being supported by substantial evidence. Therefore, the ALJ's Step 4 and Step 5 conclusions are also not supportable on review, and remand is appropriate.

Turning to the ALJ's application of the special technique, the ALJ concluded that Plaintiff had only "moderate limitations" in the areas of "interacting with others," "concentrating, persisting or maintaining pace", and "adapting or managing oneself." (A.R. 67–68). In assessing interaction with others, the ALJ cited to "the treatment records show that the claimant is capable of interacting appropriately with medical professionals and clinic/hospital staff as required to independently and adequately participate in their own medical care and decision making. The claimant is able to ask questions as well as provid[e] responsive, relevant answers to questions asked of them. The claimant has been described as cooperative by medical sources." (A.R. 67–68).

Similarly, the ALJ noted Plaintiff's ability to "independently and adequately participate in his own medical care and decision making. The treatment records do not document late arrivals or significant problems missing scheduled appointments with their medical providers. The treatment notes do not suggest that the claimant has demonstrated problems with attention or concentration at encounters with medical sources resulting in difficulties following treatment recommendations or following medication instructions" in assessing concentration, persistence or pace and/or adapting or managing oneself. (A.R. 68). In reaching these conclusions the ALJ ignored evidence that Plaintiff requires support to attend his appointments, report his symptoms reliably, understand, and recall his treatment plan. For instance, his mother presented as his primary support with Dr. Forinash, due to "his very poor memory, unable to report his history reliably or remember his medication instructions." (A.R. 1054).

Treatment records show that Plaintiff rarely presented himself to treatment without his mother or his former partner. (A.R. 614, A.R. 1107, A.R. 1114, A.R. 1130). Other records reveal that he requires medications reminders (A.R. 116–17, A.R. 331, A.R. 333, A.R. 361), and he

9

testified that his mother organizes his medications. (A.R. 115–16). December 2020 records note that his mother had to "fill in the blanks" at a visit regarding his functioning—reporting that he experienced a two-week delusional episode recently. The provider noted that there was a "low likelihood" that Plaintiff would follow through with the behavioral aspects of his treatment plan. (A.R. 902–03). Further, Plaintiff failed to present to treatment consistently and failed to refill his medications or comply with medication instructions, resulting in increased symptoms and even hospitalizations. (A.R. 466, A.R. 588, A.R. 599, A.R. 683). These records directly contradict the ALJ's conclusions and support a contention that Plaintiff does not "independently or adequately participate in his own medical care and decision making."

There is limited evidence in the record that Plaintiff interacts with others outside of family members and treatment providers–in person–in the record as the ALJ suggests. (A.R. 68). Additionally, the ALJ reports that Plaintiff has demonstrated the ability to go about the "community unaccompanied as well as driving (or using public transportation) independently" in assessing his degree of functional limitation. Instead, there is significant evidence in the record that he prefers to stay home due to his paranoia, hallucinations, and anxiety. (A.R. 528). In 2017, it was noted that his provider may "consider occasional benzodiazepine use to support specific anxiety limited activity such as leaving the house." (A.R. 613, A.R. 1080). Dr. Forinash noted that Plaintiff's "anxiety remains burdensome and limiting" so they will resume Ativan in April 2020. (A.R. 617). He had severe anxiety, particularly in public in July 2020. (A.R. 1108). Again, in October 2020, Dr. Forinash noted that Plaintiff had a "partial improvement [in his anxiety] with noticeable functional improvement in controlled settings and with good family support." (A.R. 1117). Even at baseline his anxiety was noted to remain strong. (A.R. 1142). The records

reveal multiple attempts to change or increase his medications to improve control of his anxiety symptoms.

Notably, the evidence of record also demonstrates that Plaintiff does not drive secondary to his seizure disorder, (A.R. 101), so the evidence does not support the ALJ's finding that "he is capable of ignoring or avoiding distractions while driving," (A.R. 68), and there is no evidence in the record that he uses public transportation. Instead, he relies on family members for transportation. There is additional evidence that Plaintiff rarely leaves home unaccompanied due to his severe anxiety, and he testified that he does not go out alone to grocery shop, etc. as the ALJ suggested. See (A.R. 107). He explained his difficulty with being overwhelmed while being in public, stating that "[i]t seems like when I get out in public, I hear more voices and see things that aren't there and it's just – it's like one problem compounds the other. It's just overwhelming." (A.R. 107–08). He indicated that his social communication was primarily limited to using social media like Facebook about five to ten minutes a day. (A.R. 108–09). Contrary to the ALJ's conclusions, the record indicates that Plaintiff is severely limited in his ability to interact in a public setting–or even with others outside a few family members such as his mother–due to his schizophrenia and generalized anxiety disorders.

While Plaintiff testified that he does some basic household chores and self-care tasks, (A.R. 106), he also testified that he cannot perform these activities on bad days. (A.R. 111–12). Notably, Plaintiff testified that his mother (who lives next door) checks on him "at least once a day" to see if he is "having a good day or a bad day and she'll see if [I] need anything to eat or anything." (A.R. 112). He explained that on a "bad day" he cannot cook, (A.R. 113), do even simple chores like the dishes, (A.R. 114), do his self-care and hygiene activities, (A.R. 114), and cannot go out in public even with accompaniment, (A.R. 113). Additionally, he testified to

11

relying on his mother to assist him by explaining his doctor's instructions and handling his medications. (A.R. 115–16).

He testified to difficulty with concentrating to follow movies, (A.R. 117), and noted that he had significant anxiety with changes to his daily routine. For instance, he noted panic attacks thinking about doctor's appointments or going out in public and feeling shaky when waiting for his appointments. (A.R. 118). Plaintiff's brother reported that he required reminders for medication, prepared some simple meals (microwave or sandwiches), relied on others for shopping, could not use his checkbook, went out very little (i.e., was a "homebody"), cannot drive, did not go out alone, had variable ability to sustain attention, had a poor stress tolerance, and did not handle changes to routine well. (A.R. 329–35). Plaintiff reported severely limited ability to perform activities when experiencing a schizophrenic episode ("only able to eat and use bathroom"). (A.R. 360). He described only performing self-care activities on "good days" and noted that he required reminders for medications, only made simple meals (frozen dinners, sandwiches, microwaveable items) and performed light chores for short periods of time. (A.R. 360–61). He was not able to shop independently and required assistance with his finances due to problems with concentration and memory. (A.R. 362–63). While he had a "fair ability" to get along with others, (A.R. 365) it was noted that he avoided leaving the house when possible and had severe anxiety in public, including with doctor visits. (A.R. 370). He also noted poor ability to tolerate stress and difficulty tolerating changes to his routine. (A.R. 365). This evidence contradicts the ALJ's conclusion that "he is capable of sustaining and persisting with tasks such as simple household chores, preparing simple meals, and caring for his personal needs." (A.R. 68).

Notably, in her special technique assessment, the ALJ failed to discuss the evidence showing that Plaintiff's mental conditions limit his ability to consistently engage in basic activities of daily living, particularly when he experiences an exacerbation of his symptoms, especially the evidence regarding the support Plaintiff receives from family members to sustain his baseline level of functioning. The ALJ's failure to discuss this probative evidence and explain how she reconciled this evidence with her conclusions is harmful error under 20 C.F.R. § 416.920a. Since the ALJ did not consider, and reconcile, the probative and contradictory evidence regarding Plaintiff mental health symptoms and limitations in the decision at any step the ALJ also failed to satisfy the requirements of SSR 96-8p, which states that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." See Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) ("where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review"). Here, because the ALJ failed to consider all the probative evidence when assessing Plaintiff's RFC, remand is appropriate.

### B. Plaintiff's contention that substantial evidence does not support the ALJ's conclusion that Plaintiff's testimony regarding the severity of his symptoms was not consistent with the record

Furthermore, the Court agrees with Plaintiff that substantial evidence does not support the ALJ's conclusion that Plaintiff's testimony regarding the severity of his symptoms was not consistent with the record. The ALJ supported her conclusion by noting that there are "many inconsistencies throughout the record." (A.R. 75). The ALJ first cited to the January 21, 2020,

notations from Exhibit 2E, (A.R. 315–16), where "no abnormal observations" were noted. (A.R. 75). The ALJ failed to note, however, that Plaintiff appeared "somewhat disheveled" in those same notations/observations, which is consistent with other records. The ALJ also cited to Plaintiff's testimony regarding "remodeling his house, building a porch and studding it out and installing flooring," (A.R. 75, also A.R. 762), but she failed to note that he testified that this project had lasted "a couple of years," despite it being a "small porch." (A.R. 110). When asked why he has not completed or finished this project despite several years of work, Plaintiff testified that his ability to work was dependent on whether he was "having a good day or a bad day." (A.R. 110). He further testified that on a good day he was able to work on the porch "about 30 minutes" before he stopped for 30 minutes due to hip pain. (A.R. 110). He described, however, being prevented from working "on a bad day" due to his "mind with schizophrenia." (A.R. 111). He described that his mind "just doesn't work right" on bad days. When he was asked about the symptoms, he experienced related to his schizophrenia on bad days, he indicated "it's mainly I'm hearing stuff that's not there and I'm seeing stuff. I mean – it's very confusing to tell reality from what's in my head." (A.R. 111). When asked, he described having more frequent bad days then good days. (A.R. 111). Despite this testimony, the ALJ noted only that Plaintiff described the porch work as a "work in progress." (A.R. 75, A.R. 76).

The ALJ also cited to Plaintiff's ability to "reconnect with old high school friends through Facebook," (A.R. 122), as evidence that undermined his allegations. (A.R. 75). The ALJ failed to explain, however, <u>how</u> Plaintiff's ability to spend short periods of time on social media undermines his allegations regarding his limitations. Plaintiff testified that he occasionally used Facebook–not very often– and spent about 5 to 10 minutes on this social media application when used. (A.R. 108–09). <u>See</u> <u>Lewis v Berryhill</u>, 858 F. 3d 858, 863 n.3 (4th Cir. 2017) (noting

14

that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, the evidence clearly documented Plaintiff's severe difficulties with interacting in a public environment. See (A.R. 1022 "does not leave home unless to go to a doctor"; A.R. 1033 "social anxiety not gotten better . . .high and increased when rides in a car or is otherwise overstimulated"; A.R. 528 "stays home"; A.R. 615 or 1089 "mood and demeanor affected by nearly continuous anxiety which he struggles to cope with . . .will resume Ativan as his anxiety remains burdensome and limiting"; A.R. 1107 "notes severe persistent anxiety . . .strong particularly in public"; A.R. 1141 "requests anxiety medications increased . . .anxiety remains strong around usual baseline"; A.R. 889 or 1117 "partial improvement [in anxiety] with noticeable functional improvement in controlled settings and with good family support").

The ALJ also identified numerous "inconsistencies" between Plaintiff's testimony and the treatment record. (A.R. 77–78). In support, the ALJ generally cites to records where Plaintiff failed to allege symptoms of similar severity to his allegations during the hearing. The ALJ, however, failed to discuss the other evidence of record that is consistent with Plaintiff's allegations. For example, the ALJ concluded that the evidence fails to document "complaints of breaks or symptoms of this nature and extent and at this frequency." However, the records from his treatment psychiatrist report ongoing auditory hallucinations and persecutory delusions that continued despite treatment (even following various medication files). While medications helped Plaintiff distinguish reality from the hallucinations and delusions, the record does not show that his hallucinations, delusions, or psychotic symptoms have completely resolved. Rather, the records typically state that he "generally" maintains reality discernment, suggesting incomplete resolution of these symptoms. See (A.R. 502–03, A.R. 513, A.R. 528, A.R. 540–41, A.R. 614–

15

Case 5:22-cv-00011-MOC   Document 15   Filed 09/26/22   Page 15 of 18

617, A.R. 880-883, A.R. 902–03, A.R. 914–16, A.R. 1082, A.R. 1109, A.R. 1114–17, A.R. 1141–42, A.R. 1130-1131, A.R. 43).

Additionally, the ALJ seems to dismiss Plaintiff's allegations regarding his psychotic symptoms simply because he was not observed to be actively psychotic–i.e., responding to his hallucinations or delusions on exam. The ALJ additionally ignores the evidence from Plaintiff's brother and his self-report that he exhibits unusual behaviors due to his voices. (A.R. 329, A.R. 335, A.R. 365). Finally, Dr. Forinash, Plaintiff's treating psychiatrist since at least 2017, indicated that Plaintiff and his mother reported that he may have been "under-reporting symptoms in part due to fear of change." He observed that Plaintiff "reluctantly admitted to not doing well," as his mother described that Plaintiff may go "days without distinguishing between reality and hallucinations," despite treatment. (A.R. 51–53).

The ALJ also cites to a treatment notation in the social history of the record that includes "excessive consumption of ethanol and marijuana" to discount Plaintiff's allegations. As Plaintiff notes, however, this is not listed in the "active problems" in the medical records. (A.R. 1198). In earlier records with the same provider, Plaintiff admitted to ongoing marijuana use and his provider noted that while "marijuana use is not ideal with his abuse history but again I prefer this to his ethanol use as marijuana will not cause seizures and some feel it may improve seizures." (A.R. 686). The ALJ indicated that Plaintiff's hearing testimony that he still used marijuana, "albeit a lesser amount than he used in the past," was inconsistent with a report to his "medical provider that he had stopped consuming alcohol and using illicit substance." (A.R. 76). However, the ALJ did not cite to this treatment record in her decision. While the record does contain discussion of use of alcohol and marijuana and other illicit substances, there is no clear

indication in the record that Plaintiff misinformed his treatment providers as to the extent of his marijuana use.

The ALJ also fails to note that Plaintiff consistently reported sleep difficulties throughout the treatment record. The ALJ instead relied on one report made following a seven-minute video visit with Plaintiff's primary care provider where he did not report sleep problems to undermine the consistency of his allegations. See (A.R. 502–03, A.R. 513, A.R. 528, A.R. 540–41, A.R. 614-617, A.R. 880–83, A.R. 902–03, A.R. 914–16, A.R. 1082, A.R. 1109, A.R. 1114–117, A.R. 1141–42, A.R. 1130–131, A.R. 43). Finally, the ALJ stated that the lack of medical observations regarding Plaintiff's allegations that his hands shake undermines his allegations overall. The ALJ fails to note, however, that most treatment visits in the record were conducted by telemedicine. Additionally, Plaintiff attributes his shaking to anxiety symptoms, so it is not clear why he would be evaluated for a tremor by other treatment providers. (A.R. 118, A.R. 120).

In sum, the ALJ's failure to address or reconcile certain evidence in the decision before reaching her conclusions regarding the consistency of Plaintiff's allegations with the medical and other evidence of record prevents the Court from finding that the ALJ's decision is supported by substantial evidence. For this additional reason, remand is appropriate.

## V. CONCLUSION

In sum, for the reasons stated herein, this matter is remanded for further administrative proceedings consistent with this Order.

Having thoroughly reviewed the ALJ's decision, the record, and the parties' motions and briefs, the Court enters the following Order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that for the reasons set forth above, Plaintiff's Motion for Summary Judgment (Doc. No. 11) is **GRANTED**, Defendant's Motion for Summary Judgment (Doc. No. 13) is **DENIED**, and this matter is **REVERSED** and **REMANDED** to the Commissioner for further administrative proceedings consistent with this Order.

Signed: September 26, 2022

Max O. Cogburn Jr
United States District Judge